Scott Edward Cole, Esq. (CA S.B. #160744) (*pro hac vice* forthcoming)
**COLE & VAN NOTE**
555 12th Street, Suite 1725
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile:  (510) 891-7030
Email:  sec@colevannote.com
Web:    www.colevannote.com

Ronald W. Armstrong, II, Esq. (S.B. #24059394)
**THE ARMSTRONG FIRM, PLLC**
310 S. Saint Mary's, Suite 2700
San Antonio, Texas 78205
Telephone: (210) 277-0542
Facsimile:  (210) 277-0548
Email:  rwaii@tafpllc.com


Attorneys for Representative Plaintiff
and the Plaintiff Class

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| PAUL FEDORYS, individually, and on behalf of all others similarly situated,<br><br>               Plaintiff(s),<br>vs.<br><br>ETHOS GROUP, INC.,<br><br>               Defendant. | **Case No.**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF FOR:**<br><br>1. **NEGLIGENCE;**<br>2. **BREACH OF CONFIDENCE;**<br>3. **BREACH OF IMPLIED CONTRACT;**<br>4. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.**<br><br>**[JURY TRIAL DEMANDED]** |

1

Representative Plaintiff(s) alleges as follows:

## **INTRODUCTION**

1.       Representative Plaintiff Paul Fedorys ("Representative Plaintiff") brings this class action against Defendant Ethos Group, Inc. ("Defendant") for its failure to properly secure and safeguard Representative Plaintiff's and Class Members' personally identifiable information stored within Defendant's information network, including, without limitation, name and driver license number  (these types of information, *inter alia*, being thereafter referred to, collectively, as "personally identifiable information" or "PII").[1]

2.       With this action, Representative Plaintiff seeks to hold Defendant responsible for the harms it caused, and will continue to cause, Representative Plaintiff and, at least, 267,316[2] others similarly situated persons in the massive and preventable cyberattack purportedly discovered by Defendant on August 1, 2022, by which cybercriminals infiltrated Defendant's inadequately protected network servers and accessed highly sensitive PII belonging to both adults and children, which was being kept unprotected (the "Data Breach").

3.       Representative Plaintiff further seeks to hold Defendant responsible for not ensuring that the PII was maintained in a manner consistent with industry and other relevant standards.

4.       While Defendant claims to have discovered the breach as early as August 1, 2022, Defendant did not begin informing victims of the Data Breach until on or around November 2, 2022. Indeed, Representative Plaintiff and Class Members were wholly unaware of the Data Breach until they received letters from Defendant informing them of it. The notice received by Representative Plaintiff was dated on November 2, 2022.

---

[1]    Personally identifiable information ("PII") generally incorporates information that can be used  to   distinguish or trace an individual's identity, either alone or when combined with other personal or  identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers  that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).
[2]    https://oagtx.force.com/datasecuritybreachreport/apex/DataSecurityReportsPage (last accessed November 10, 2022).

5.      Defendant acquired, collected, and stored Representative Plaintiff's and Class Members' PII. Therefore, at all relevant times, Defendant knew, or should have known, that Representative Plaintiff and Class Members would use Defendant's services to store and/or share sensitive data, including highly confidential PII.

6.      By obtaining, collecting, using, and deriving a benefit from Representative Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties to those individuals. These duties arise from state and federal statutes and regulations, as well as common law principles.

7.      Defendant disregarded the rights of Representative Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Representative Plaintiff's and Class Members' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PII of Representative Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Representative Plaintiff and Class Members in the future. Representative Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one other Class Member is a citizen of a state different from Defendant.

9.      Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

10.    Defendant is headquartered and routinely conducts business in the State where this District is located, has sufficient minimum contacts in this State, and has intentionally availed itself of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State.

11.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Representative Plaintiff's claims took place within this District, and Defendant does business in this Judicial District.

## **PLAINTIFF**

12.    Representative Plaintiff is an adult individual and, at all relevant times herein, a resident and citizen of New York. Representative Plaintiff is a victim of the Data Breach.

13.    Defendant received highly sensitive personal information from Representative Plaintiff in connection with the support services and consulting it provides. As a result, Representative Plaintiff's information was among the data accessed by an unauthorized third party in the Data Breach.

14.    Representative Plaintiff received—and were "consumer" for purposes of obtaining services from Defendant within this state.

15.    At all times herein relevant, Representative Plaintiff is and was a member of each of the Classes.

16.    As required in order to obtain services from Defendant, Representative Plaintiff provided Defendant with highly sensitive personal information.

17.    Representative Plaintiff's PII was exposed in the Data Breach because Defendant stored and/or shared Representative Plaintiff's PII. His PII and financial information was within the possession and control of Defendant at the time of the Data Breach.

18.    Representative Plaintiff received a letter from Defendant, dated on or about November 2, 2022, stating that his PII was involved in the Data Breach (the "Notice").

19.    As a result, Representative Plaintiff spent time dealing with the consequences of the Data Breach, which included and continues to include, time spent verifying the legitimacy and

impact of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring his accounts and seeking legal counsel regarding his options for remedying and/or mitigating the effects of the Data Breach. This time has been lost forever and cannot be recaptured.

20.     Representative Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Defendant, which was compromised in and as a result of the Data Breach.

21.     Representative Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using, and selling his PII.

22.     Representative Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, in combination with his name, being placed in the hands of unauthorized third parties/criminals.

23.     Representative Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## **DEFENDANT**

24.     Defendant Ethos Group, Inc. has a principal place of business located at 370 West Las Colinas Boulevard, Irving, Texas 75039.

25.     Defendant operates in the automotive industry and provides car dealerships with a range of support services, including consulting, recruiting, training, compliance, and insurance solutions.[3]

26.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Representative Plaintiff. Representative Plaintiff will seek leave of court to amend

---

[3]     https://www.ethosgroup.com (last accessed November 10, 2022)

this Complaint to reflect the true names and capacities of such responsible parties when the identities become known.

## CLASS ACTION ALLEGATIONS

27.    Representative Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and the following class:

**Nationwide Class:**
"All individuals within the United States of America whose PII was exposed to unauthorized third-parties as a result of the Data Breach discovered by Defendant on August 1, 2022."

**Texas Subclass:**
"All individuals within the State of Texas whose PII was exposed to unauthorized third-parties as a result of the Data Breach discovered by Defendant on August 1, 2022."

28.    Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

29.    Also, in the alternative, Representative Plaintiff requests additional Subclasses as necessary based on the types of PII that were compromised.

30.    Representative Plaintiff reserves the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

31.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in the proposed classes is easily ascertainable.

a.    Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff

6

Classes are so numerous that joinder of all members is impractical, if not impossible. Representative Plaintiff is informed and believe and, on that basis, allege that the total number of Class Members is in the hundreds of thousands of individuals. Membership in the classes will be determined by analysis of Defendant's records.

b.    Commonality: Representative Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

1)    Whether Defendant had a legal duty to Representative Plaintiff and the Classes to exercise due care in collecting, storing, using and/or safeguarding their PII;

2)    Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

3)    Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

4)    Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

5)    Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

6)    Whether Defendant adequately, promptly, and accurately informed Representative Plaintiff and Class Members that their PII had been compromised;

7)    How and when Defendant actually learned of the Data Breach;

8)    Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Representative Plaintiff and Class Members;

9)    Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

10)    Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Representative Plaintiff and Class Members;

11)    Whether Representative Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct;

12)    Whether Representative Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

c.  <u>Typicality</u>: Representative Plaintiff's claims are typical of the claims of the Plaintiff Classes. Representative Plaintiff and all members of the Plaintiff Classes sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

d.  <u>Adequacy of Representation</u>: Representative Plaintiff in this class action are adequate representatives of each of the Plaintiff Classes in that the Representative Plaintiff has the same interest in the litigation of this case as the Class Members, are committed to vigorous prosecution of this case and have retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the classes in their entirety. Representative Plaintiff anticipates no management difficulties in this litigation.

e.  <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Plaintiff Classes to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Plaintiff Classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

32.    This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classed in their entirety. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Representative Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Classes in their entirety, not on facts or law applicable only to Representative Plaintiff.

33.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, and Defendant may continue to act unlawfully as set forth in this Complaint.

34.    Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the

Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## COMMON FACTUAL ALLEGATIONS

### The Cyberattack

35.     In the course of the Data Breach, one or more unauthorized third-parties accessed Class Members' sensitive data including, but not limited to, name and driver's license number. Representative Plaintiff was among the individuals whose data was accessed in the Data Breach.

36.     According to the Data Breach Notification, which Defendant filed with the Attorney General of Texas, at least 267,316 persons were affected by the Data Breach.[4]

37.     Representative Plaintiff was provided the information detailed above upon his receipt of a letter from Defendant, dated on or about November 2, 2022. Representative Plaintiff was not aware of the Data Breach—or even that Defendant was still in possession of his data until receiving that letter.

### Defendant's Failed Response to the Breach

38.     Upon information and belief, the unauthorized third-party cybercriminals gained access to Representative Plaintiff's and Class Members' PII with the intent of engaging in misuse of the PII, including marketing and selling Representative Plaintiff's and Class Members' PII.

39.     Not until roughly three months after it claims to have discovered the Data Breach did Defendant begin sending the Notice to persons whose PII Defendant confirmed was potentially compromised as a result of the Data Breach. The Notice provided basic details of the Data Breach and Defendant's recommended next steps.

40.     The Notice included, *inter alia*, the claims that Defendant had learned of the Data Breach on August 1, 2022 and had taken steps to respond.

---

[4]     https://oagtx.force.com/datasecuritybreachreport/apex/DataSecurityReportsPage (last accessed November 10, 2022).

41.    Upon information and belief, the unauthorized third-party cybercriminals gained access to Representative Plaintiff's and Class Members' PII with the intent of engaging in misuse of the PII, including marketing and selling Representative Plaintiff's and Class Members' PII.

42.    Defendant had and continues to have obligations created by applicable federal and state law as set forth herein, reasonable industry standards, common law, and its own assurances and representations to keep Representative Plaintiff's and Class Members' PII confidential and to protect such PII from unauthorized access.

43.    Representative Plaintiff and Class Members were required to provide their PII to Defendant in order to receive support services, including consulting, recruiting, training, compliance, and insurance solutions, and as a part of providing such services, Defendant created, collected, and stored Representative Plaintiff and Class Members PII with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

44.    Despite this, Representative Plaintiff and the Class Members remain, even today, in the dark regarding what particular data was stolen, the particular malware used, and what steps are being taken, if any, to secure their PII and financial information going forward. Representative Plaintiff and Class Members are, thus, left to speculate as to where their PII ended up, who has used it and for what potentially nefarious purposes. Indeed, they are left to further speculate as to the full impact of the Data Breach and how exactly Defendant intends to enhance its information security systems and monitoring capabilities so as to prevent further breaches.

45.    Representative Plaintiff's and Class Members' PII may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Representative Plaintiff and/or Class Members. Either way, unauthorized individuals can now easily access the PII of Representative Plaintiff and Class Members.

**Defendant Collected/Stored Class Members' PII and Financial Information**

46.    Defendant acquired, collected, and stored and assured reasonable security over Representative Plaintiff's and Class Members' PII.

47.     As a condition of its relationships with Representative Plaintiff and Class Members, Defendant required that Representative Plaintiff and Class Members entrust Defendant with highly sensitive and confidential PII. Defendant, in turn, stored that information on Defendant's system that was ultimately affected by the Data Breach.

48.     By obtaining, collecting, and storing Representative Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew, or should have known, that they were thereafter responsible for protecting Representative Plaintiff's and Class Members' PII from unauthorized disclosure.

49.     Representative Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Representative Plaintiff and Class Members relied on Defendant to keep their PII confidential and securely maintained, and to make only authorized disclosures of this information.

50.     Defendant could have prevented the Data Breach, which began as early as July 30, 2022, by properly securing and encrypting and/or more securely encrypting its servers generally, as well as Representative Plaintiff's and Class Members' PII.

51.     Defendant's negligence in safeguarding Representative Plaintiff's and Class Members' PII is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

52.     Due to the high-profile nature of these breaches, and other breaches of its kind, Defendant was and/or certainly should have been on notice and aware of such attacks occurring and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack. This is especially true given that Defendant is a large, sophisticated corporation with the resources to put adequate data security protocols in place.

53.     Yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Representative Plaintiff's and Class Members' PII from being compromised.

**Defendant Had an Obligation to Protect the Stolen Information**

54.    Defendant's failure to adequately secure Representative Plaintiff's and Class Members' sensitive data breaches duties it owes Representative Plaintiff and Class Members under statutory and common law.

55.    Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

56.    In addition to its obligations under federal and state laws, Defendant owed a duty to Representative Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Representative Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII of Representative Plaintiff and Class Members.

57.    Defendant owed a duty to Representative Plaintiff and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that the PII in its possession was adequately secured and protected.

58.    Defendant owed a duty to Representative Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the PII in its possession, including not sharing information with other entities who maintained sub-standard data security systems.

59.    Defendant owed a duty to Representative Plaintiff and Class Members to implement processes that would immediately detect a breach on its data security systems in a timely manner.

60.     Defendant owed a duty to Representative Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

61.     Defendant owed a duty to Representative Plaintiff and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to entrust this PII to Defendant.

62.     Defendant owed a duty of care to Representative Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

63.     Defendant owed a duty to Representative Plaintiff and Class Members to encrypt and/or more reliably encrypt Representative Plaintiff's and Class Members' PII and financial information and monitor user behavior and activity in order to identify possible threats.

**Value of the Relevant Sensitive Information**

64.     PII is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on a number of underground internet websites.

65.     The high value of PII to criminals is further evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[5] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[6] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[7]

---

[5]     *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at:* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed July 28, 2021).

[6]     *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at:* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed November 5, 2021).

[7]     *In the Dark*, VPNOverview, 2019, *available at:* https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed January 21, 2022).

66.     These criminal activities have and will result in devastating financial and personal losses to Representative Plaintiff and Class Members. For example, it is believed that certain PII compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma. Such fraud will be an omnipresent threat for Representative Plaintiff and Class Members for the rest of their lives. They will need to remain constantly vigilant.

67.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

68.     Identity thieves can use PII and financial information, such as that of Representative Plaintiff and Class Members which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

69.     The ramifications of Defendant's failure to keep secure Representative Plaintiff's and Class Members' PII are long lasting and severe. Once PII and financial information is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, the PII of Representative Plaintiff and Class Members was taken by hackers to engage in identity theft or to sell it to other criminals who will purchase the PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

70.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[8]

71.     And data breaches are preventable.[9] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[10] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[11]

72.     Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs.[12]

73.     Here, Defendant knew of the importance of safeguarding PII and of the foreseeable consequences that would occur if Representative Plaintiff's and Class Members' PII and financial information was stolen, including the significant costs that would be placed on Representative Plaintiff and Class Members as a result of a breach of this magnitude. As detailed above, Defendant is a large, sophisticated organization with the resources to deploy robust cybersecurity protocols. They knew, or should have known, that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Representative Plaintiff and Class Members. Its failure to do so is, therefore, intentional, willful, reckless and/or grossly negligent.

74.     Defendant disregarded the rights of Representative Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized

---

[8]     *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed January 21, 2022).
[9]     Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)
[10]    *Id.* at 17.
[11]    *Id.* at 28.
[12]    *Id.*

intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Representative Plaintiff's and Class Members' PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Representative Plaintiff and Class Members prompt and accurate notice of the Data Breach.

**FIRST CLAIM FOR RELIEF**
**Negligence**
**(On behalf of the Nationwide Class and the Texas Subclass)**

75.    Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein

76.    At all times herein relevant, Defendant owed Representative Plaintiff and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their PII and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing the PII of Representative Plaintiff and Class Members in its computer systems and on its networks.

77.    Among these duties, Defendant was expected:

    a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in its possession;

    b.    to protect Representative Plaintiff's and Class Members' PII using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

    c.    to implement processes to quickly detect the Data Breach and to timely act on warnings about data breaches; and

    d.    to promptly notify Representative Plaintiff and Class Members of any data breach, security incident, or intrusion that affected, or may have affected, their PII.

78.    Defendant knew that the PII was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Representative

Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

79. Defendant knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security. Defendant knew about numerous, well-publicized data breaches.

80. Defendant knew, or should have known, that its data systems and networks did not adequately safeguard Representative Plaintiff's and Class Members' PII.

81. Only Defendant were in the position to ensure that its systems and protocols were sufficient to protect the PII that Representative Plaintiff and Class Members had entrusted to it.

82. Defendant breached its duties to Representative Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Representative Plaintiff and Class Members.

83. Because Defendant knew that a breach of its systems could damage thousands of individuals, including Representative Plaintiff and Class Members, Defendant had a duty to adequately protect its data systems and the PII contained therein.

84. Representative Plaintiff(s)' and Class Members' willingness to entrust Defendant with their PII was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems and the PII they stored on them from attack. Thus, Defendant had a special relationship with Representative Plaintiff and Class Members.

85. Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Representative Plaintiff's and Class Members' PII and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant and Representative Plaintiff and/or the remaining Class Members.

86. Defendant breached its general duty of care to Representative Plaintiff and Class Members in, but not necessarily limited to, the following ways:

a.    by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PII and financial information of Representative Plaintiff and Class Members;

b.    by failing to timely and accurately disclose that Representative Plaintiff(s)' and Class Members' PII and financial information had been improperly acquired or accessed;

c.    by failing to adequately protect and safeguard the PII and financial information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII and financial information;

d.    by failing to provide adequate supervision and oversight of the PII and financial information with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII and financial information of Representative Plaintiff and Class Members, misuse the PII and intentionally disclose it to others without consent.

e.    by failing to adequately train its employees to not store PII and financial information longer than absolutely necessary;

f.    by failing to consistently enforce security policies aimed at protecting Representative Plaintiff(s)' and the Class Members' PII and financial information;

g.    by failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

h.    by failing to encrypt Representative Plaintiff(s)' and Class Members' PII and financial information and monitor user behavior and activity in order to identify possible threats.

87.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

88.    As a proximate and foreseeable result of Defendant's grossly negligent conduct, Representative Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

89.    The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the PII to Representative Plaintiff and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their PII.

90.    Defendant breached its duty to notify Representative Plaintiff and Class Members of the unauthorized access by waiting months after learning of the Data Breach to notify

Representative Plaintiff and Class Members and then by failing and continuing to fail to provide Representative Plaintiff and Class Members sufficient information regarding the breach. To date, Defendant have not provided sufficient information to Representative Plaintiff and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Representative Plaintiff and Class Members.

91.    Further, through its failure to provide timely and clear notification of the Data Breach to Representative Plaintiff and Class Members, Defendant prevented Representative Plaintiff and Class Members from taking meaningful, proactive steps to secure their PII.

92.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Representative Plaintiff and Class Members and the harm suffered, or risk of imminent harm suffered by Representative Plaintiff and Class Members. Representative Plaintiff's and Class Members' PII and financial information was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII and financial information by adopting, implementing, and maintaining appropriate security measures.

93.    Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

94.    The damages Representative Plaintiff and Class Members have suffered (as alleged above) and will suffer, were and are the direct and proximate result of Defendant's grossly negligent conduct.

95.    Additionally, 15 U.S.C. § 45 (FTC Act, Section 5) prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII and financial information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

96.    Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect PII and financial information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount

of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Representative Plaintiff and Class Members.

97.     Defendant had a duty to employ reasonable security measures and otherwise protect the PII of Plaintiff and Class Members pursuant to the Texas Consumer Privacy Act.

98.     Defendant systematically failed to provide adequate security for data in its possession.

99.     Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant's possession.

100.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' PII.

101.    Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

102.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII and financial information is used; (iii) the compromise, publication, and/or theft of their PII and financial information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and financial information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (vi) lost continuity in relation to their healthcare; (vii) the continued risk to their PII and financial information, which may remain in Defendant's possession and is subject to further unauthorized disclosures, so long as Defendant fails to undertake appropriate and adequate measures to protect Representative Plaintiff's and Class Members' PII

and financial information in its continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and financial information compromised as a result of the Data Breach for the remainder of the lives of Representative Plaintiff and Class Members.

103.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

104.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their PII and financial information, which remain in Defendant's possession and are subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and financial information in its continued possession.

## SECOND CLAIM FOR RELIEF
### Breach of Confidence
### (On behalf of the Nationwide Class)

105.    Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth therein.

106.    At all times during Representative Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential nature of the PII that Representative Plaintiff and Class Members provided to it.

107.    As alleged herein and above, Defendant's relationship with Representative Plaintiff and the Class Members was governed by promises and expectations that Representative Plaintiff and Class Members' PII would be collected, stored, and protected in confidence, and would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

108.    Representative Plaintiff and Class Members provided their respective PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII and financial information to be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

109.    Representative Plaintiff and Class Members also provided their PII to Defendant with the explicit and implicit understanding that Defendant would take precautions to protect their PII from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting its networks and data systems.

110.    Defendant voluntarily received, in confidence, Representative Plaintiff's and Class Members' PII with the understanding that the PII would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by and/or viewed by the public or any unauthorized third parties.

111.    Due to Defendant's failure to prevent, detect, and avoid the Data Breach from occurring by, *inter alia*, not following best information security practices to secure Representative Plaintiff's and Class Members' PII, Representative Plaintiff's and Class Members' PII and financial information was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by and/or viewed by unauthorized third parties beyond Representative Plaintiff's and Class Members' confidence, and without its express permission.

112.    As a direct and proximate cause of Defendant's actions and/or omissions, Representative Plaintiff and Class Members have suffered damages, as alleged therein.

113.    But for Defendant's failure to maintain and protect Representative Plaintiff's and Class Members' PII in violation of the parties' understanding of confidence, their PII would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by and/or viewed by unauthorized third parties. The Data Breach was the direct and legal cause of the misuse of Representative Plaintiff's and Class Members' PII, as well as the resulting damages.

114.    The injury and harm Representative Plaintiff and Class Members suffered and will continue to suffer was the reasonably foreseeable result of Defendant's unauthorized misuse of Representative Plaintiff's and Class Members' PII. Defendant knew its data systems and protocols for accepting and securing Representative Plaintiff's and Class Members' PII had security and other vulnerabilities that placed Representative Plaintiff's and Class Members' PII in jeopardy.

115.    As a direct and proximate result of Defendant's breaches of confidence, Representative Plaintiff and Class Members have suffered and will suffer injury, as alleged herein, including, but not limited to, (a) actual identity theft; (b) the compromise, publication, and/or theft of their PII; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (d) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft; (e) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Class Members' PII in its continued possession; (f) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Representative Plaintiff and Class Members; (g) the diminished value of Representative Plaintiff's and Class Members' PII; and (h) the diminished value of Defendant's services for which Representative Plaintiff and Class Members paid and received.

### THIRD CLAIM FOR RELIEF
### Breach of Implied Contract
### (On behalf of the Nationwide Class)

116.    Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth therein.

117.    Through its course of conduct, Defendant, Representative Plaintiff and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Representative Plaintiff's and Class Members' PII.

118.    Defendant required Representative Plaintiff and Class Members to provide and entrust their PII as a condition of obtaining Defendant's services.

119.    Defendant solicited and invited Representative Plaintiff and Class Members to provide their PII as part of Defendant's regular business practices. Representative Plaintiff and Class Members accepted Defendant's offers and provided their PII to Defendant.

120.    As a condition of being direct customers/employees of Defendant, Representative Plaintiff and Class Members provided and entrusted their PII to Defendant. In so doing, Representative Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential, and to timely and accurately notify Representative Plaintiff and Class Members if their data had been breached and compromised or stolen.

121.    A meeting of the minds occurred when Representative Plaintiff and Class Members agreed to, and did, provide their PII to Defendant, in exchange for, amongst other things, the protection of their PII.

122.    Representative Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

123.    Defendant breached the implied contracts it made with Representative Plaintiff and Class Members by failing to safeguard and protect their PII and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

124.    As a direct and proximate result of Defendant's above-described breach of implied contract, Representative Plaintiff and Class Members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

## FOURTH CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On behalf of the Nationwide Class and the Texas Subclass)

125.    Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth therein.

126.    Every contract in this state has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

127.    Representative Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendant.

128.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the Data Breach to Representative Plaintiff and Class Members and continued acceptance of PII and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

129.    Defendant acted in bad faith and/or with malicious motive in denying Representative Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

### RELIEF SOUGHT

**WHEREFORE,** Representative Plaintiff, on behalf of himself and each member of the proposed National Class and the Texas Subclass, respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1.    That the Court declare, adjudge, and decree that this action is a proper class action and certify each of the proposed classes and/or any other appropriate subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including appointment of Representative Plaintiff's counsel as Class Counsel;

2.      For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.      That the Court enjoin Defendant, ordering them to cease and desist from unlawful activities;

4.      For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Representative Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, any accurate disclosures to Representative Plaintiff and Class Members;

5.      For injunctive relief requested by Representative Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Representative Plaintiff and Class Members, including but not limited to an Order:

a.      prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

b.      requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

c.      requiring Defendant to delete and purge the PII of Representative Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Representative Plaintiff and Class Members;

d.      requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Representative Plaintiff's and Class Members' PII;

e.      requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

f.      prohibiting Defendant from maintaining Representative Plaintiff's and Class Members' PII on a cloud-based database;

g.      requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

h.      requiring Defendant to conduct regular database scanning and securing checks;

i.      requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the

employees' respective responsibilities with handling PII, as well as protecting the PII of Representative Plaintiff and Class Members;

j.      requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

k.      requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated;

l.      requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

6.      For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

8.      For all other Orders, findings, and determinations identified and sought in this Complaint.

## JURY DEMAND

Representative Plaintiff, individually and on behalf of the Plaintiff Class(es) and/or Subclass(es), hereby demands a trial by jury for all issues triable by jury.


Dated: November 15, 2022          **THE ARMSTRONG FIRM, PLLC**

_____
Ronald W. Armstrong, II, Esq.
Texas Bar No. 24059394
310 S. Saint Mary's, Suite 2700
San Antonio, TX 78205
(210) 277-0542

Dates: November 15, 2022                    **COLE & VAN NOTE**

Scott Edward Cole, Esq. (CA S.B. #160744) (*pro hac vice* forthcoming)
555 12th Street, Suite 1725
Oakland, CA 94607
(510) 891-9800